# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **DONNA HOLLINGSHEAD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 4:10CV1602ERW/MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the applications of Donna Hollingshead ("Plaintiff") for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§

405(g). Plaintiff filed a Brief in Support of the Complaint. Doc. 21. Defendant filed a Brief in

Support of the Answer. Doc. 24. This matter was referred to the undersigned United States

Magistrate Judge pursuant to 28 U.S.C. § 636. Doc. 5.

## PROCEDURAL HISTORY

On March 18, 2008, Plaintiff filed applications for benefits. Tr. 92-108. Plaintiff's

applications were denied and she requested a hearing before an administrative law judge ("ALJ").

Tr. 5-57. After a hearing, the ALJ found, by decision dated December 18, 2009, that Plaintiff was

not disabled within the meaning of the Act. Tr. 14-23. Plaintiff submitted additional evidence to the

Appeals Council, which denied her request for review of the ALJ's decision on July 13, 2010. Tr. 1-6.

As such, the ALJ's decision is the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## VI.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff contends that she became disabled on March 13, 2008, at which time she was forty-five years old. Plaintiff testified at the hearing she completed the tenth grade; that she last worked September 19, 2007, at which time she was taking care of her mother through Heartland; that she had a head injury in 1970, an "eardrum" placed in her left ear, leg problems, pain in her knees, a stroke, and very high blood pressure; that since the stroke she has had to wear glasses; that because of the stroke she had trouble with her arm and leg and a loss of feeling in her hand. Tr. 30-38, 44. Plaintiff also testified that she could lift a grocery bag with bread or cereal; that she could lift a gallon of milk with her left hand; that she could go forwards with a vacuum cleaner with her left hand; that she could make beds if they were away from the wall; that she did not drive very often since her stroke; and that she drove her son's truck Tr. 42-43, 48. The ALJ found that Plaintiff had the severe impairments of hypertension and residuals from cerebrovascular disease; that she had no impairment or combination of impairments which met a listed impairment; that her subjective complaints were not credible; that she could not perform her past relevant work as a caregiver/homemaker, janitor, or cook; that Plaintiff had the RFC to perform the full range of light work; and that, therefore, Plaintiff was not disabled. Tr. 16-23.

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because she cannot control and manage her movement and strength on her right side; because the medical

evidence dictates a finding that she is disabled; and because she meets the Listing for central nervous system vascular accident, Listing 11.04.[1]

A.      **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including whether Plaintiff met Listing 11.04. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to

_____

[1]      Plaintiff's Brief in Support of Complaint merely cites the listing for central nervous system vascular accident. Plaintiff fails to suggest what aspects of Plaintiff's diagnosis and treatment the ALJ failed to consider nor does she reference any of her medical records. Plaintiff also states that the ALJ did not "properly apply[] the Blue book, 2008." Nonetheless, the court will review the ALJ's decision and the record, in detail, to assure that the ALJ's decision is supported by substantial evidence and that it is consistent with the Regulations.

make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff's activities of daily living did not support her contentions of pain and other physical limitations. In this regard, the court notes that a March 27, 2008 occupational therapy evaluation states that Plaintiff reported that there were as many as "20 children of all ages and adults" in her home or yard on many days and evenings. Tr. 259. On December 8, 2008, Plaintiff reported that she watched "the kids all weekend." Tr. 355. On December 12, 2008, Plaintiff reported that she would be "watching the kids" that evening. Tr. 356. In April 2008, Plaintiff reported that she was going to ride bikes that weekend. Tr. 271. Also, in April 2008, Plaintiff reported that she went to the science center with six children, walked around for four-and-a-half hours, and took the stairs rather than the elevator. Tr. 273. Further, Plaintiff reported, in April 2008, that she "mowed around the edge of the yard a little with the weed eater [and was] getting better with the dishes." Tr. 277. Additionally, the ALJ considered that Plaintiff reported that she lived alone, did dishes and vacuuming, took out the trash, raked leaves, gardened, shopped twice a

week, and went to the post office and that her hobbies included walking and watching television. Tr. 21. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy, 953 F.2d at 386; Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883. "[I]nconsistencies between [a claimant's] subjective complaints and [her] activities diminish [her] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Second, that ALJ considered that Plaintiff made statements to treatment providers which were inconsistent with her claim that she was disabled and that Plaintiff's inconsistent statements suggest that she may have exaggerated her allegations. Tr. 21. In this regard, although Plaintiff stated in an activities questionnaire, completed in mid-April 2008, that she could not rake leaves, she stated in a

comparable questionnaire, dated June 5, 2008, that she could rake leaves. Tr. 131, 156. In November 2008, Plaintiff told her therapist, Melissa A. West, O.T.R., that she had been raking leaves for Sullivan Homes in order to keep her electricity from being turned off. Tr. 350. Plaintiff also told Ms. West that she placed a pillowcase on a pillow with "minimal difficulty." Tr. 350. In December 2008, Plaintiff told Ms. West that she "pretty much [did] everything," although "some things [still] hurt" her. Tr. 352. Additionally, Ms. West reported that Plaintiff was "somewhat of a poor historian" and that, when Ms. West asked Plaintiff if she experienced numbness or tingling, Plaintiff stated that "not that I can tell"; that several minutes later Plaintiff stated that she "didn't have feeling down her entire [right] VE"; that Plaintiff "even reported that she dropped her [right] arm/hand in a hot pan of grease yesterday when she was cooking & did not notice"; and that Ms. West did not see evidence of burns. Tr. 352-53. Further, as noted by the ALJ, Plaintiff told Ms. West, on December 8, 2008, that "she was involved 'in many home management and child care tasks.'" Tr. 18-19, 355. Indeed, Ms. West reported, on December 12, 2008, that Plaintiff said she was going to "watch[] the kids." Tr. 356. Also, Plaintiff testified at the hearing that she tried to rake leaves occasionally. Tr. 47. An ALJ may discredit a claimant's allegations of pain based on inconsistencies in subjective reports of pain. See Eichelberger, 390 F.3d at 589.

Third, the ALJ considered that Plaintiff discontinued physical therapy "without providing an explanation." Tr. 21. Ms. West reported, on April 28, 2008, that she attempted to call Plaintiff without success; that she tried to reach Plaintiff again on April 30 and May 29, 2008, and that she had no further contact with Plaintiff. The record further reflects that Plaintiff returned to physical therapy in November 2008 and was discharged in March 2009, due to lack of contact. Tr. 350-64. "A failure to follow a recommended course of treatment [] weighs against a claimant's credibility." Guilliams,

393 F.3d at 802. As such, the court finds that ALJ's decision, in this regard, is supported by substantial evidence.

Fourth, the ALJ considered Plaintiff's work history and that her earnings record did not suggest that she would be working even if she did not have severe impairments. In particular, the ALJ considered that Plaintiff earned in excess of $6,620 in only three years since her eighteenth birthday in 1980 and that her highest year of earning was 2006, when she earned $8,676.25. Tr. 21. The ALJ further considered that one year of SSI at the full monthly rate would provide Plaintiff "considerably more annual income than she achieved in all but three years through working." Tr. 21-22. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The court finds, therefore, that the ALJ properly considered Plaintiff's work history and that his decision, in this regard, is supported by substantial evidence.

Fifth, the ALJ considered the medical evidence upon finding that Plaintiff was not fully credible. A factor to be considered in regard to a claimant's credibility is the objective medical evidence, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. Halverson, 600 F.3d at 932 (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir.2008)). In particular, the ALJ considered that Plaintiff was hospitalized from March 14 through 19, 2008, during which time she was diagnosed with right medullary hemorrhage, uncontrolled hypertension, let ventricular hypertrophy, and hyperlipidemia. It was noted during Plaintiff's hospitalization that Plaintiff's right upper extremity strength was 4-/5 with right

upper extremity drift; that she had full strength in her lower extremities and let upper extremity; that her fine finger movements were slightly slowed in her right upper extremity; that she was unable to heel and toe walk; and that she had marked concentric left ventricular hypertrophy. The court notes that a chest x-ray performed while Plaintiff was hospitalized was "consistent with pulmonary edema" and showed that the heart was "mildly enlarged." Tr. 17, 170-88. The ALJ further considered that Riaz A. Nasser, M.D., conducted a neurological examination of Plaintiff, on August 16, 2008, and that Dr. Nasser opined that the results from previous CT scan of Plaintiff's head and a transthoracic echocardiogram were negative. The ALJ considered that Dr. Nasser reported that Plaintiff had normal gait and was able to ambulate independently; that her blood pressure was 238/129;[2] that, upon a motor examination, she did not exhibit drift to either side; that her deep tendon reflexes appeared brisk on the right; that there was no evidence of gross cerebellar deficit; that Plaintiff had difficulty with tandem walking; that she demonstrated definite hyperreflexia on the right; that Plaintiff's range of motion in the major joints was normal; that her speech was normal; that she could sit, stand, and walk; and that she "could be expected to have some difficulty with lifting/carrying." Tr. 17-18. The court also notes that Dr. Naseer reported that Plaintiff was alert and oriented; that her heart was "[r]egular with no murmur"; that her "lower extremities [were] normal"; that her fields of vision were full in all four quadrants; that her facial sensation was intact; that there was "no evidence of gross cerebellar deficit"; that Plaintiff was able "to ambulate without an assistive device"; and that she was able to "handle small objects." Tr. 303-304.

---

[2]    See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (holding that a high blood pressure reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure which measures within the range of 140-180/90-115 is considered mild or moderate, and that hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 4.00 C).

Next, the ALJ considered that Tammy R. Watz, R.N., F.N.P., reported, on November 7, 2008, that Plaintiff had some weakness in the upper right extremity and in her right leg and that her blood pressure was 138/98. Tr. 18. The court notes that occupational therapy notes of November 8, 2008, state that Plaintiff would "benefit from occupational therapy to regain maximum level of function"; that Plaintiff's potential to reach her goals was "[g]ood"; and that her potential to return "to full prior level of function[ing]" was good. Tr. 344. Conditions which can be controlled by treatment are not disabling. See Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d at 384; Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

Further, the ALJ considered that Plaintiff began occupational therapy on November 13, 2008. The ALJ considered that records of this date reflect that Plaintiff said she had memory problems and that, to compensate, she wrote things down; that Plaintiff said she was "pain free except for occasional pain in her left forearm at night"; that, in terms of functional mobility, Plaintiff was "independent with all transitions, transfers and ambulation"; that Plaintiff complained of fatigue and "occasional difficulty with functional mobility"; and that the objective of therapy was to increase Plaintiff's motion and strength in her right upper extremity. Tr. 18, 344-45. Nurse Watz reported, on November 14, 2008, that Plaintiff's blood pressure was 110/80. Tr. 455. The ALJ considered that on December 12, 2008, Ms. West reported that Plaintiff did not experience pain upon palpation of her right shoulder. Tr. 19, 356. As considered by the ALJ, Ms. West reported on January 2, 2009, that Plaintiff had made "excellent progress [with] bean bag toss" and that she might benefit from "Wii

therapy." Tr. 19, 359. Significantly, as considered by the ALJ, Ms. West reported on January 16, 2009, that Plaintiff was progressing toward her range of motion and strength goals and, on February 3, 2009, it was reported that Plaintiff's right grip strength was twelve pounds and her left grip strength was twenty-eight pounds. Tr. 19, 361, 363. See Medhaug, 578 F.3d at 813; Schultz, 479 F.3d at 983. On January 6, 2009, Nurse Watz reported that Plaintiff's blood pressure was 130/80 and that Plaintiff stated that "she ha[d] been feeling better." Tr. 449. The ALJ considered that Nurse Watz reported, on February 12, 2009, that Plaintiff's blood pressure was 150/104. Tr. 19, 448. The ALJ further considered that Nurse Watz reported, on February 26, 2009, that Plaintiff said she had "some discomfort in her right shoulder"; that she had been "cleaning with it"; and that, on examination, Plaintiff had normal range of motion in her right arm. The court notes that on this date Plaintiff's blood pressure was 110/80. Tr. 19, 446.

A report from a chest x-ray, dated March 24, 2009, states that "soft tissues and osseous structures [were] unremarkable"; that the heart was "mildly enlarged"; that "the pulmonary vascularity appear[ed] normal"; that "[n]o active pulmonary infiltrate [was] seen"; and that the impression was "[n]o active cardiac or pulmonary process" and [m]ild cardiomegaly." Tr. 489.

The ALJ considered that Plaintiff underwent surgery, on April 8, 2009, for urinary incontinence and pelvic relaxation and that records reflect that Plaintiff tolerated this procedure well. Tr. 19. Additionally, the ALJ considered that Jason T. Riley, O.D., conducted an eye examination of Plaintiff, on June 9, 2009, and that this examination showed that Plaintiff had "minimal" hypertensive retinitis in the left eye; that her vision was 20/20 in both eyes with corrective lenses; and that Plaintiff was advised to return in one year for follow-up. Tr. 19, 317.

The ALJ also considered that, on June 16, 2009, Plaintiff's blood pressure was 120/90; that her only diagnosis were hypertension and bilateral leg pain; and that Plaintiff said her leg pain was

worse at night. Tr. 19.  The ALJ considered that, on September 9, 2009, Nurse Watz reported that

Plaintiff was complaining of dizzy spells; that her blood pressure was 96/78; that Plaintiff complained

of right shoulder pain; and that Plaintiff was diagnosed with acute muscle strain, for which medication

was prescribed. Tr. 20.  The ALJ considered that, on September 23, 2009, Plaintiff's blood pressure

was 104/78 and her hypertensive medication was decreased. Tr. 20.  Also, on this date, upon

"recheck," Plaintiff's blood pressure was 98/70. Tr. 479.  The ALJ considered that, on October 28,

2009, Plaintiff had "minimal" edema in her lower extremities and her only diagnosis were

hypertension and "cough of questionable etiology." Tr. 20-21, 477.  The court finds that the ALJ

properly considered Plaintiff's medical records upon concluding that her complaints were not fully

credible and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

## B.   Listing 11.04:

At step 3 of the sequential analysis used to determine if a claimant is disabled, the ALJ must

determine whether the claimant has an impairment which meets or medically equals the criteria of an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  To be found disabled at step 3, a

claimant must also meet the duration requirement, described above. 20 C.R.R. § 416.909.  "The

listings define impairments that would prevent an adult, regardless of his age, education, or work

experience, from performing any gainful activity, not just 'substantial gainful activity.'" Sullivan v.

Zebley, 493 U.S. 521, 532 (1990) (emphasis deleted).  To equal medically a listed impairment, the

medical findings must at least be equal in severity and duration to the listed impairment. 20 C.F.R.

§ 404.1526(a); Marciniak v. Shalala, 49 F.3d 1350, 1353 (8th Cir. 1995) ("'For a claimant to show

that his impairment matches a listing, it must meet *all* of the specified medical criteria.'") (quoting

Sullivan, 493 U.S. at 530) (emphasis in original).  See also Moore ex rel. Moore v. Barnhart, 413

F.3d 718, 721 n.3 (8th Cir. 2005) (noting that ALJ's failure to address specific listing is not reversible

error if record supports overall conclusion). A claimant bears the burden to establish that he meets or equals a listing; an impairment must meet all criteria for a listing. Carlson v. Astrue, 604 F.3d 589, 593 (8th Cir. 2010); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

Plaintiff suggests that she has an impairment which meets or equals Listing 11.04. 20 C.R.F. Pt. 404, Subpt. P, App. 1, Listing 11.04 provides:

Central nervous system vascular accident. With one of the following more than 3 months post-vascular accident:

A. Sensory or motor aphasia resulting in ineffective speech or communication; or

B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

As stated above, it was Plaintiff's burden to establish that she met either prong of Listing 11.04. Indeed, there is no evidence that Plaintiff had ineffective speech or communication more than three months after her vascular accident. Also, Plaintiff testified that she could walk "to the end of the block," although her right leg dragged, and that she could open the fingers of her right hand, although she had difficulty gripping and loss of feeling. Tr. 35-38. As noted by the ALJ, Plaintiff had some limitation of her right upper extremity after her March 2008 right medullary hemorrhage. Upon Plaintiff's therapy evaluation on March 27, 2008, however, as stated above, it was noted that Plaintiff was ambulatory; that she had *full strength in her lower extremities*; that Plaintiff was able to complete "*3 sets x 10 reps.*" with a "Hand Helper with *10 lbs. resistance*"; and that her fine finger movements were only *slightly slowed* in her right upper extremity. Tr. 259-63. Also, on April 11, 2008, Plaintiff's therapist reported that Plaintiff continued to progress and her coordination had improved; on April 14, 2008, Plaintiff reported that she *walked* around the science center for *four and a half hours* with six children and *took the stairs*; and, on April 21, 2008, Plaintiff reported that she used a weed eater Tr. 272-3, 277. Additionally, in August 2008, as set forth above, Dr. Naseer reported

that Plaintiff had *normal lower extremities*, *gait, and range of motion*; that she could ambulate independently; that there was *no evidence of any impairment in Plaintiff's right extremities*; that Plaintiff had intact sensation; and that she *could handle small objects*.   In November 2008, Plaintiff was able to place a pillowcase on a pillow.  Also, as discussed above, in February 2009, Plaintiff had normal range of motion in her right arm and she had right grip strength of twelve pounds and left grip strength of twenty-eight pounds.  As such, the court finds that substantial evidence supports a finding that Plaintiff did not meet Listing 11.04.  The court further finds the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or medically equalled a listing is supported by substantial evidence.   Moreover, based on the record as discussed above, the court finds that substantial evidence supports a finding that Plaintiff did not meet the duration requirement in regard to Listing 11.04.  As such, the court finds that the ALJ's decision finding that Plaintiff was not disabled at step 3 is based on substantial evidence.

C.    **Plaintiff's RFC and Medical-Vocational Guidelines:**

The ALJ concluded that Plaintiff had the RFC for the full range of light work as defined in 20 C.R.F. §§ 404.1567(b) and 416.967(b).  The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b).  Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at*6.

"The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker, 363 F.3d at 783 (quoting McKinney, 228 F.3d at 863). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).  Upon determining Plaintiff's RFC, the

ALJ considered that Plaintiff never experienced more than temporary dysfunction in her lower right extremity and that her hypertension had not been severe for twelve or more continuous months. Although Plaintiff's blood pressure was high in March 2008, it was 138/98 in November 2008. 20 C.F.R. § 414.909 states that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." As noted by the ALJ, Dr. Naseer reported, in August 2008, that Plaintiff had normal range of motion in the major joints, and that she could sit, stand, and walk, although she would have some difficulty lifting/carrying. Also, Plaintiff's grip strength bilaterally was 5/5 in August 2008. Tr. 307. Thus, the court finds that the ALJ's determination that Plaintiff had the RFC for the full range of light work is consistent with the medical evidence of record.

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris, 356 F.3d at 929. The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, as discussed above, the ALJ in the matter under consideration found that Plaintiff's subjective complaints were not credible. Only after defining Plaintiff's limitations and restrictions did the ALJ conclude that Plaintiff's restrictions did not preclude her from engaging in the full range of light work, which RFC takes into account her limited ability to lift/carry. As such, the court finds that the ALJ's RFC determination is supported by substantial evidence and that it is consistent with the Regulations and case law.

Because the ALJ did not find that Plaintiff had any non-exertional limitations, because he found that she had the RFC for the full range of light work, because the ALJ's RFC determination

is supported by substantial evidence, and because the ALJ found that Plaintiff could not perform her past relevant work, the ALJ was permitted to rely on the Medical-Vocational Guidelines to determine whether there was work that Plaintiff could perform. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). See also SSR 83-10, 1983 WL 31251, at *1; Reynolds, 82 F.3d at 258 (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). The ALJ also considered Plaintiff's age, in that she was a younger individual, and that she had limited education and was able to communicate in English, upon determining whether there was work which Plaintiff could perform. Only after doing so did the ALJ conclude that there were jobs existing in significant numbers in the national economy that Plaintiff could perform and that, therefore, she was not disabled, according to the Guidelines. The court finds that the ALJ properly relied on the Guidelines to determine that Plaintiff was not disabled and that his decision, in this regard, is supported by substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is based on substantial evidence contained in the record as a whole, and that the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Complaint be **DENIED** and that Judgment be entered in favor of Defendant. Docs. 1, 21.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of July, 2011.